```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| IVORY JOHNSON, individually, and on behalf of, NATAVIAN JOHNSON, a minor,<br><br>            Plaintiffs,<br><br>    v.<br><br>CITY OF PLEASANTVILLE, HERBERT SIMMONS, MICHAEL HARTMAN, JOHN DOES 1-10, ABC CORPS 1-5<br><br>            Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil Action<br>No. 05-4258 (JBS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

   This matter comes before the Court upon the motion of Defendants City of Pleasantville, Patrolman Herbert Simons and Patrolman Matthew Hartmen (the "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff Ivory Johnson, individually and on behalf of Natavian Johnson (a minor) brought this cause of action against Defendants claiming the following: (1) a 42 U.S.C. § 1983 ("Section 1983") claim in which Ivory Johnson claims false arrest, excessive force and malicious prosecution in violation of her Fourth and Fourteenth Amendment rights against Patrolman Herbert Simons ("Patrolman Simons") (Counts 1 and 4 of the Complaint); (2) a Section 1983 claim in which Plaintiff Natavian Johnson claims excessive force in violation of his Fourth and Fourteenth Amendments against Defendant Patrolman Matthew Hartman ("Patrolman Hartman") (Count 5); (3) a common law tort claim for intentional and/or negligent

infliction of emotional distress brought by Ivory Johnson against Patrolman Simons (Count 3); (4) a failure to train Patrolman Simons claim by Plaintiff Ivory Hartman and claims of respondeat superior against the City of Pleasantville (Counts 2, 4 and 6); and (5) a claim for the "loss of services" of her son Natavian Johnson brought by Ivory Johnson against Patrolman Simons (mistakenly captioned as "Simmons"), Patrolman Hartman and the City of Pleasantville (Count 7).  Defendants' motion for summary judgment is unopposed and for the following reasons, it will be granted.[1]

**The Court finds as follows**:

1.  On Sunday, April 25, 2004 at approximately 12:30 a.m., Patrolman Simons, a patrolman with the City of Pleasantville Police Department, responded to a call of physical domestic violence at an apartment complex in Pleasantville, New Jersey. (Def.'s Statement of Facts as to Ivory Johnson ¶ 2.)  While en route, Patrolman Simons was notified that the accused, James Spruill, had returned to his residence and was possibly in possession of a weapon.  (Id. ¶ 3.)  When Patrolman Simons arrived at the parking lot between two apartment buildings, he

---

[1] The Defendants' motion, filed March 14, 2007, was returnable on April 20, 2007, and Plaintiffs' opposition was due April 6, 2007.  The motion was scheduled for oral argument on May 17, 2007.  In the absence of opposition, oral argument would serve no purpose and it is cancelled.  The motion remains unopposed by Plaintiffs.

saw a large group of people fighting (some physically and others verbally) at which point he called for assistance.  (Id. ¶ 5, 7.)

    2.   Patrolman Simons first performed a pat-down of Spruill and determined that he had no weapons in his possession.  Simons reported that, as he patted down Spruill, the surrounding crowd moved towards him in a gesture he believed to be threatening to Spruill and himself.  (Id. ¶ 9-11.)  Simons testified that he ordered the members of the crowd to move back several times, but they were generally non-compliant.  (Id. ¶ 12-14.)  One member of the crowd was Ivory Johnson, who, in her deposition, admits to being told numerous times to step away from Patrolman Simons and Spruill.  (Id. ¶ 19.)  According to her deposition, Ivory Johnson, along with a Dorothy Lewis, was in the crowd and began speaking with Patrolman Simons about the events of the fight.  (Id. ¶ 22-24.)  Patrolman Simons reports that he then told Dorothy Lewis to step away from him and Spruill numerous times without compliance.  After Lewis failed to comply with his numerous commands to step back, Patrolman Simons arrested her.  (Id. ¶ 25.)  The crowd, including Ivory Johnson, responded by "continu[ing] to push on Simons" with the crowd coming so close to him that he had to physically push them back.  (Id. ¶ 27.)  After Ivory Johnson came "close enough [to Simons] to push her back while he was arresting Dorothy Lewis and because she was not compliant with his orders to step back," Simons arrested Ivory

Johnson charging her with obstruction of justice.  (Id. ¶ 30.) She was taken to the Pleasantville Police Department for processing and later released on her own recognizance.  (Id. ¶ 31-32.)[2]

3.   Patrolman Hartman responded to Patrolman Simons' call for additional units to handle a large fight in progress. (Def.'s Statement of Facts as to Natavian Johnson ¶ 5.)  Once on the scene, Patrolman Hartman testified that he observed, in addition to the yelling back and forth between the Spruill family and the Johnson family, two male juveniles running around the scene "screaming and yelling" at Patrolman Simons.  (Id. ¶ 9.)  One of the juveniles, twelve-year-old Natavian Johnson, was attempting to reach his mother Ivory Johnson who had been arrested earlier by Patrolman Johnson and placed in a police car.  (Id. ¶ 10.)

4.   According to Natavian's testimony, he was "hysterical" "because [he] was mad, trying to get to [his] mom, because [he] did not understand why she was being arrested."  (Id. ¶ 11.) Patrolman Simons reports having to push Natavian away "on several occasions," that Natavian continued to return to the location after an adult had taken him away, and continued to use curse words and swing his arms in a violent manner in an attempt to

---

[2]  Ivory Johnson was not treated by any medical or psychological provider for any injuries incurred during her arrest and the charges against her were eventually dismissed by the municipal court.  (Id. ¶ 33.)

4

free his mother despite being instructed by Simons to step back. (Id. ¶ 12-13.)  After being advised on several occasions to get back, Natavian continued to come at Patrolman Hartman.  Patrolman Hartman proceeded to take physical control over Natavian by grabbing him by his shirt and escorting him away from the police car.  (Id. ¶ 18.)  Upon releasing Natavian, Natavian cursed at and threatened Patrolman Hartman at which point Hartman regained control of Natavian, utilized a leg sweep to take Johnson to the ground and placed Natavian's left arm in an arm bar in an attempt to gain control of him.  (Id. ¶ 21.)  Hartman then requested that adults in the area (which appeared to Hartman to be Natavian's friends and family) take control of Natavian, which they did. (Id. ¶ 23.)[3]

5.  According to Johnson, he arose without assistance, had no scratches or red marks on his neck and had only had a very small amount of blood coming out one of his arms.  (Id. ¶ 25.) Natavian would later go to the hospital and was diagnosed with a cervical sprain.  (Id. ¶ 27.)  After he was released from the hospital, Natavian reports going to his family doctor only one

---

[3] Natavian was eventually arrested and processed in juvenile court for obstruction of justice (in violation of N.J. Stat. Ann. § 2C:29-1(a)) as well as for threatening Patrolman Harment (in violation of N.J. Stat. Ann. 2C:12-3a.) From testimony of Ivory Johnson, the charges against Natavian were ultimately administratively dismissed contingent upon him staying out of trouble.     (Id. ¶ 31.)

time and admits to having full use of his neck and arms.  (Id. ¶ 28-29.)

6.   Plaintiffs filed their complaint (the "Complaint") in New Jersey Superior Court, Law Division, Atlantic County on July 20, 2005.  In the Complaint, Plaintiffs allege claims under 42 U.S.C. § 1983,[4] the New Jersey Tort Claims Act and for Ivory Johnson's loss of the services of her son, Natavian.  Defendants removed this matter to this Court on August 30, 2005.  The matter was then referred to arbitration and the arbitrator filed an arbitration award on January 19, 2007.  In mid-February, 2007, both Plaintiffs and Defendants filed requests for a trial de novo on February 12, 2007.  [Docket Item No. 13].  Defendants filed this motion for summary judgment on March 14, 2007. [Docket Item No. 14.]  The motion is unopposed.

7.   On a motion for summary judgment, the court must determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)(citing Fed. R. Civ. P. 56(c)).  A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec.

---

[4] Specifically, Plaintiffs allege that Patrolman Hartman and Simons violated their rights to be free from false arrest, excessive force and malicious prosecution under the Fourth and Fourteenth Amendment and that the City of Pleasantville was liable for failure to train Patrolmen Hartman and Simons.

6

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the nonmoving party fails to oppose the motion by evidence such as written objection, memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)(quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)).  If the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate," and only if movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); see Anchorage Assocs., 922 F.2d at 175.

8.  The Court will first address Defendants' motion for summary judgment with respect to Plaintiff's Section 1983 claims against defendant City of Pleasantville (Counts 2,3 and 6). Here, the Court holds that summary judgment in favor of the City is appropriate because the City is entitled to qualified immunity.  Local governing bodies can be sued directly under 42 U.S.C. § 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978).  Municipal liability attaches only where execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  See id. at 694.  In the case of either policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).[5]

9.   In this case, Plaintiffs have failed to present any evidence from which a reasonable jury could determine that the City of Pleasantville maintained an official policy or custom warranting a finding of municipal liability or that the City failed to properly train either Patrolman Simons or Hartman.  Likewise, Plaintiffs have failed to demonstrate that the City of Pleasantville had actual notice of the conduct giving rise to the alleged constitutional violation or that similar incidents have occurred in the past.  As such, the Court will grant Defendants' motion for summary judgment as to the City because summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322-23 (1986).

---

[5] In other words, an official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983.  Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694.)

10. With respect to Plaintiff Ivory Johnson's Section 1983 claims for false arrest, excessive force and malicious prosecution (Counts 1 and 4) against Patrolman Simons, the Court will also grant Defendants' motion for summary judgment because Simons had probable cause to arrest Ivory Johnson for obstruction of justice. In the Third Circuit, an arrest without probable cause is a constitutional violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989); see also Albright v. Oliver, 510 U.S. 266, 274, (1994).[6] Probable cause, however, is an absolute defense to a plaintiff's false arrest and malicious prosecution claims. See Dowling v. Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)(false arrest); Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000)(malicious prosecution). Thus, the central issue here is whether there was probable cause, or alternatively, whether it was objectively reasonable for the officers to believe that probable cause existed at the time of the arrest. See id. In determining whether there was probable cause to arrest and bring an obstruction of justice charge against Ivory Johnson, the Court looks to the statutes that

---

[6] Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (internal quotations omitted). To state a claim for false arrest, a plaintiff must allege two elements: (1) an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).

Plaintiff Ivory Johnson allegedly violated.  N.J. Stat. Ann. 2C:29-1(a) provides that a person commits obstruction of justice:

> if he purposely obstructs, impairs or perverts the administration of law . . . or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.

A person may be convicted of obstruction of justice where the individual curses at police and refuses to follow police instructions as the officers attempt to make an arrest.  See State v. Hernandez, 338 N.J. Super. 317, 232 (App. Div. 2001). "Probable cause [for an arrest, however] exists if at the time of the arrest 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Wildoner, 162 N.J. at 389 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  In a malicious prosecution action, a plaintiff bears the burden of proof that the defendant lacked of probable cause. See Lind v. Schmid, 67 N.J. 255, 262-63 (1975)("The plaintiff must establish a negative, namely, that probable cause did not exist.")

11.  Under the facts in this case, this Court finds that Patrolman Simons had probable cause to arrest Ivory Johnson for obstruction of justice because Patrolman Simons made the arrest after he reasonably concluded that she physically interfered with

his attempts to (1) arrest James Spruill and Dorothy Lewis (the two parties involved in the incident of domestic violence) and (2) bring a chaotic domestic violence scene under control. Despite repeated requests from Patrolman Simons for Ivory Johnson to move back while he was arresting Dorothy Lewis, Simons had to physically push her back.  By refusing to obey his orders to move away, Ivory Johnson physically interfered with Simons as he performed his duties.  Because such conduct constitutes obstruction of justice, Patrolman Simons had probable cause to arrest Plaintiff Ivory Johnson.  As such, summary judgment in favor of Patrolman Simons is appropriate.

        12.  In a related claim, Plaintiff Natavian Johnson claims that Patrolman Hartman used excessive force in violation of his Fourth Amendment rights when he allegedly restrained Natavian Johnson during the course of Hartman's arrest of Natavian for obstruction of justice and terroristic threats (Count 5). Natavian's claim of excessive force arises under the Fourth Amendment which prohibits the use of excessive force by a law enforcement officer.  See U.S. Const. amend XIV;  see also Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). However, "not every push or shove violates the Fourth Amendment and the right to sue a certain degree of force must be analyzed in light of the facts and circumstances of each particular case."

11

Graham, 490 U.S. at 396.  Indeed, the Third Circuit has held that:

> The test is an objective one, which scrutinizes the reasonableness of the challenged conduct.  The facts to be examined include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Reasonableness is to be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Carswell, 381 F.3d at 240 (quoting Graham, 490 U.S. at 396 (internal citations omitted)).

    12.  In this case, Patrolman Hartman came upon a chaotic scene, at night, where his fellow officer was attempting to stop a fight and make an arrest surrounding an incident of domestic violence.  In addition, according to Hartman, he was alerted that a member of the crowd potentially had a gun.  As Patrolman Simons arrested Natavian's mother, Hartman repeatedly told Natavian -- who characterized himself as "hysterical" at seeing his mother arrested -- to move back and that Natavian would not be permitted to speak with his mother.  In order to control the scene, Patrolman Hartman physically removed Natavian and attempted to release him to the control of friends and relatives while Natavian resisted.  Upon being released, Natavian cursed at and threatened Patrolman Hartman.  At that point, Hartman, holding on to Natavian, took Natavian to the ground in order to control him.  There is no evidence that Patrolman Hartman did anything other

than take steps necessary to restrain Natavian in a potentially dangerous situation.  As such, the Court will grant summary judgment in favor of Patrolman Hartman with respect to Natavian Johnson's claim of excessive force.

    13.  Plaintiffs Ivory and Natavian Johnson next bring common law causes of action against Patrolmen Simons and Hartman. Specifically, Ivory Johnson alleges that the conduct of Patrolman Simons caused Ivory to "suffer emotional pain and suffering, humiliation and embarrassment" (Count 3) and Natavian Johnson alleges that the conduct of Patrolman Hartman caused Natavian to suffer "emotional pain" (Count 5).  Defendants argue that, because neither Plaintiff can meet the verbal threshold requirement of the New Jersey Tort Claims Act ("Tort Claims Act"), N.J. Stat. Ann. 59:1-1 to 59:12-3, the Court must grant summary judgment in favor of Defendants.  Under the Tort Claims Act:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J. Stat. Ann. 59:9-2(d).  "[I]n order to vault the pain and suffering threshold under the Tort Claims Act, a plaintiff must satisfy a two-pronged standard by proving (1) an objective permanent injury, and (2) a permanent loss of a bodily function

13

that is substantial." Gilhooley v. County of Union, 164 N.J. 533, 540-41 (2000); see Brooks v. Odom, 150 N.J. 395 (1997).

14. Here, Defendants argue that Plaintiff has not met the Tort Claims Act's verbal threshold requirement as a matter of law. The Court agrees. Plaintiffs have not submitted any opposition to Defendants' motion as to the state law claims, or presented admissible evidence relating to the permanency of any of their injuries (either emotional or physical). To the contrary, Defendants have presented evidence that (1) Ivory Johnson was not seen by any medical personnel and (2) after his initial hospital visit in April of 2004, Natavian Johnson only saw his family physician one time and admitted having full use of his arms and neck. Accordingly, the Court will grant summary judgment in favor of Defendants as to Counts 3 and 5.

15. Finally, this Court will address Plaintiff Ivory Johnson's claim of the loss of her son Natavian's services as a result of the injuries he suffered during his arrest (Count 7). This claim is likewise a tort action which falls under New Jersey's Tort Claims Act, discussed above. This claim fails for the same reasons. New Jersey law recognizes a cause of action for a parent's loss of the services of a child. See Coll v. Sherry, 29 N.J. 166 (1959). However, "[b]efore a jury can consider loss of earning capacity, there must be evidence demonstrating a "reasonable probability that [the plaintiff's]

14

injuries will impair [his] future earning capacity." <u>Lesniak v. County of Bergen</u>, 117 N.J. 12, 15 (1989)(quoting <u>Coll</u>, 29 N.J. at 176). Here, there is no evidence that Natavian suffered any injuries that will impair his future earning capacity. In fact, there is considerable evidence that Natavian suffered only a minor cervical sprain, only saw his family physician one time for a follow-up to this injury and admits to having full use of his neck and arms. Moreover, there is no evidence that he suffered any psychological or neurological injury that would negatively impact his mental capacity. Therefore, this Court will grant summary judgment in favor of the Defendants with respect to Count 7 as well.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment will be granted as to all claims herein by Plaintiffs Ivory and Natavian Johnson. The accompanying Order will be entered.

| | |
|---|---|
| **May 14, 2007** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |